Hear ye, hear ye. United States Court of Appeals for the Sixth Circuit is now in session. All persons have a business before this honorable court. Draw near, give attention, ye shall be heard. God save the United States and this honorable court. The court has been called, your honors. All right, thank you. We'll hear from the appellant first. Let's start. Case number 20-5001 USA ex rel Gurpreet Maur MD v. Elie Hage-Korban et al. All arguments not to exceed 15 minutes to be shared by Ms. Shelby, Mr. Shelby Searing for the I am the attorney for the appellant and relater, Dr. Gurpreet Maur, and I have reserved three minutes for rebuttal. Okay. I don't see the clock moving. Judges, the district court's order granting motions to dismiss should be overturned. The district court erred in determining that the relater's claims are subject to the public disclosure bar and that the relater is not an original source. I will address the public disclosure bar. We have pointed to Ibanez v. Bristol Myers Squibb as on-point Sixth Circuit authority, which is completely analogous to the facts here and which forestalls the application of the public disclosure bar to our case. Ibanez holds that allegations that a fraud scheme either continued or was restarted despite agreements that putatively ended the fraud, in other words, an integrity agreement, are unique. They survive the public disclosure bar. Ibanez identified such cases as being unique because they are. This is not a typical settlement where a defendant pays settlement funds and admits no liability. When an integrity agreement or an IA, as I may be referring to it at times this morning, is entered into, the defendant is essentially acknowledging the fraud, promising that it will stop, and setting forth steps to satisfy the government that future fraud will not occur. The government and the public are assured by these agreements that fraud has been rooted out and that it will end. This expectation is evidenced by the Department of Justice press release issued in 2013 when Deming was resolved and the applee, Dr. Corbin, entered into the integrity agreement. The Department of Justice described this in its press release as a victory in the war against healthcare fraud, and the government. Ms. Serig, you got a question? Yes, sir. How does, you guys love your acronyms, how does the IRO work? I guess that stands for Independent Review Organization. So, independent suggests outside the government. How did that work? What was their responsibility and authority and expectations? Sure. The IRO had review responsibilities. They would review the records and claims generated by Dr. Corbin and Delta. Their review was based on information and documents that were supplied to them by Dr. Corbin and Delta. They then prepared reports regarding their review and supplied those and so that went through 2016. And who was the IRO? Is that like a consultant, private consultant, or who were they? Yes, that's correct. It's a private entity that I believe is separate from the government. Frankly, I'm not sure what the name of the entity was, but it is an entity that's separate from the government, Judge. So, the thing that I'm struggling with in the case and with your theory of the case is it's almost as if the doctor was on probation and the point of this IRO was to investigate whether the fraud was continuing. And so, that seems to take it out of, I mean, I get the idea that you could have a world in which a continuing violation becomes new or materially adds or it's public disclosure. I get all of that. But in a situation where you've got this IRO and the allegations overlap solely with the IRO and their jurisdiction up through 16, that seems different. It's almost as if you have a grand jury sitting and thinking about similar allegations. And that has me troubled that a ketan suit can be filed over the same thing. So, how do you react to that? That is similar. Oh, I'm sorry. I didn't know if there was more that you wanted to say there. I'm sorry. I didn't mean to cut you off. Your concerns are very similar to those that were raised by the appellees in the case and were raised by the district court. So, the district court found that Ibanez did not apply, as you know. And in so finding, the court made an erroneous distinction between the Ibanez IA and the IA in this case. So, much like you just did, the district court stated that the Ibanez IA only required the adoption of procedures designed to ensure future compliance, whereas the IA in this case was different and it entailed ongoing reporting requirements to the government. But the district court's findings in this regard were incorrect because in Ibanez, there was not one but two integrity agreements that were in place, both of which were effective for five-year periods of time and which required ongoing reporting to the government. I do not know for certain if that was accomplished through the use of an IRO, but there was an obligation for ongoing reporting to the government regarding their practices. Both IA and Ibanez were in effect and required ongoing reporting at the time that Ibanez- Ms. Sarek, I have a suggestion. Do not read. You need to look at us because you can't hear us for some reason. So, we'll raise our hand, but you can't see our hand if you don't look at the camera. All I'm asking about is the situation where there's an independent review. So, you got to answer that question. It doesn't help any to talk about Ibanez when it didn't have the independent review. I mean, it may not be dispositive. That's why I'm asking the question. I have no idea what the answer is. Right. The point that I was trying to make is that Ibanez was in effect for five years and Ibanez entailed ongoing reporting requirements to the government. Okay. So, this is to an independent review organization. That's why- Right. Who then passes on reports to the government. Yes, or it's like a grand jury or like a probation officer. Why are those bad analogies? Oh, I'm not saying that they're bad analogies. I'm just saying that a similar issue was addressed in Ibanez in which this court found that despite those ongoing reporting obligations, which were in effect at the time that Ibanez was filed, Ibanez was permitted to move forward because that relator was bringing forth new information, which was that the fraud had continued or restarted after the integrity agreement had been entered into. As the Ibanez court observed, the government is not necessarily aware that a fraudulent scheme continues or has restarted simply because it resolved a similar scheme in the past. Quite the opposite is true. Judge Seiler has a question. Yes. Gene, we can't hear you. Okay. Can you hear me now? Yeah. Okay. Well, my question is, what is the overlap between the allegations in your complaint and when this IA was in effect? Was it still in effect during the integrity agreement? Yes, sir. I believe that the integrity agreement expired in November of 2016 and that most of our allegations stem from events that occurred in spring and summer of 2016. I think that we may have presented one patient example that occurred after the integrity agreement expired. However, again, in Ibanez, there were two integrity agreements that were in effect at the time that Ibanez was filed and those claims were permitted to proceed. When Dr. Mauer initiated this action, there was no information in the public domain indicating that the fraud had continued or restarted after the execution of the integrity agreement. Rather, all information indicated that the Deming Relator had revealed a fraud many years earlier, that the fraud had been resolved, and that the fraud was promised to never reoccur. So, Ibanez has a narrow category of cases to which the bar does not apply, and those are cases that... Counsel, keep looking at the screen. It'll help you a lot. So, without using the word Ibanez... Sure. What would you say is the statutory support? How do you look at the statute and its reference to public disclosures, you know, substantially the same allegations, but then it has the original source definition, materially adds? Help us through the statute. How does the statute work in this case from your perspective? Well, I would say that the public disclosure bar only applies when the Relator is presenting any new information, and that my client is presenting new information that was not revealed in the earlier public disclosures. My client has revealed a new story where the fraud has continued after the execution of the integrity agreement. And along those same lines... Sorry, I want you for a second. Along those same lines regarding the original source statute, my client does have information that materially adds to those public disclosures because, again, he is revealing new information, which is that the fraud has continued after the execution of the integrity agreement and the promise to discontinue the fraud. So, Counsel, help me understand. Your client has six examples after the integrity agreement was entered into, but what if he only had one? So, the statute says materially adds. So, if he had one example that took place after the integrity agreement had been entered into or the settlement with the regional hospital, would that be enough? What does it mean to materially add? Mm-hmm. Well, I think that he is not only offering those patient examples, but he's also offering his firsthand personal observations, and that's something that we've talked a lot about in the amended complaint. He's offered his observations of patient treatments, his review of the records, his observation that some of the records are being falsified. A patient is saying they don't have chest pain, and then the record is stating that they do. And so, I think that it's not only about the patient examples, but also what he's bringing to the table with his firsthand observations. And so, that, coupled with the example... I'm sorry. But, Counsel, those aren't observations that would go directly to CNTR, for example. Like, oh, well, we had a meeting, and we told everybody to cover this up or submit false claims. They're just observations about patient care. They're not observations, necessarily, that would go directly to fraud. Mm-hmm. I would respectfully disagree with that, Judge, in the sense that my client is saying that he's observed patients report one symptom, and the Delta positions reflect a completely different symptom on the records, which would then justify all of these unnecessary procedures. Can I ask you one other question? You're almost out of time, so I want to get this in. Sure. The district court ruled on 9B grounds with respect to CHS, and the hospital defendants have said we should extend that ruling to them. So, first, how would you be harmed if we did that? And secondly, what about extending that ruling to Corbin and the Delta clinics? In other words, it's just a... I understand they didn't raise it, but it is a pure question of law, and it would seem to me to apply similarly to all defendants. So, and you did have a chance to argue it in the district court with respect to the one defendant. So, how would your client be harmed if we did that? Well, I mean, as I indicated in our reply brief, we think that the appellate court has jurisdiction to conduct a review of an order granting a motion to dismiss, but the district court did not grant the hospital or Dr. Corbin's motion to dismiss for lack of particularity. And I understand that they've raised those 9B arguments in their motion to dismiss, but the court's order states that the court would solely focus on whether Relator Maurer's amended complaint states a claim upon which relief can be granted to CHS. And I think that under the applicable case law, or the case law that was cited, the Harper case, that is not sufficient support for being able to basically re-litigate a denied motion to dismiss when that issue has not been raised on appeal. And clearly I'm out of time, and so I would just defer to our written submission for any other questions. Okay. Thank you so much. We'll hear from, I don't know who's next, but you probably know who you are. Yeah. May it please the court. My name is Scott Newton, and I represent Dr. Ely Corbin and Delta Clinics, and I will be speaking for seven minutes, Your Honor. Okay. Delta Clinics and Dr. Corbin were sued a second time based on admittedly identical allegations in an earlier False Claim Act case. The issue before you is whether the district court properly dismissed the QUITAM action pursuant to the public disclosure bar. The district court dismissed the QUITAM, finding it was barred by the public disclosure bar because the allegations in the amended complaint were previously publicly disclosed and substantially the same as those in the prior Deming case, and because he was not an original source. It leaves the court with two pertinent questions. Were relators alleged false claims publicly disclosed prior to the filing of his QUITAM? And if so, was the relator the original source of them? If you find the answers to the two questions, yes and no, you must affirm. Counsel, what's your response to Mr. Eric's reliance on Ibanez? Your Honor, we distinguish Ibanez based on the facts specific to the Deming scenario, but we believe that it gives this court the opportunity to address situations where post-settlement or post-resolution of a case there is the conditional resolution where the OIG has a CIA with an IRO in place monitored by the OIG versus a situation where the OIG is relying on a self-disclosure in a CIA as in Ibanez. So there is a material difference. So what I was hearing from Ms. Serig, my initial instinct was to agree with you, and then it dawned on me based on what Ms. Serig said that the only thing the they're not going to give damning stuff to the independent reviewer. And the independent reviewer, as I understand it, isn't doing spot checks or interviewing people, or maybe they are. Are they independently interviewing patients? Your Honor, let me address the question that you asked her. The independent review organization is typically a law firm, accounting firm, or consulting firm. They are independent of the provider, even though they're paid by the OIG. They have the auditing and monitoring functions of the OIG. They are called the eyes and ears of the OIG. They conduct here, it was a comprehensive IA that involved the extensive review of coding, billing, and reimbursement of all cardiology items and as substantive medical reviews of a litany of cardiac procedures. So this is a fully engaged, independent organization conducting a review that is responsible for ongoing communication with the OIG. Okay, so that all sounds good, but do they actually have like auditing, fact-finding authority? Could they go and say, okay, there's this one time they put a stent in, we're going to go and interview, we're going to go look at what happened, we're going to go look at the prior diagnosis, we're going to talk to the patient, we're going to find out whether what is said in the report is consistent with what he complained about when he went to the doctor. Can they do that? Absolutely, Your Honor. The independent review organization can review records. They can conduct interviews. They can conduct interviews outside of the provider. They fact-find, yes. It's our view that the role of the independent review organization is to not make legal conclusions, but what they do is they determine deficiencies, and if those deficiencies rise to the level of what is called a reportable event, the reportable event is reviewed by the provider and maybe their outside counsel and then submitted to the OIG. The OIG then can take, there's two tracks after that, the OIG can determine if there's stipulated penalties for breach. They can take all kinds of actions against the provider. They can have material breach where they exclude the provider, or significantly here, the OIG can make a referral to the Department of Justice civilly and or nationally. Next question is, let's say the complaint was different. Everything else is the same, but this complaint is only about January 2018 and going forward, and he's up to his old tricks. It uses some of the same things from the original complaint, but everything is after the new. I take it you wouldn't have a public disclosure bar there, right? Your Honor, the issue is, no, no, is the answer. The issue is government awareness, government notification and expectation, and with an IRO and monitored by the United States government, monitored by the OIG, you have that, and that is better than, that is, they are much more qualified, and they are better suited to conduct the review of this provider than a private litigant who here, we would argue, is simply a, this is simply an opportunistic plaintiff filing a parasitic lawsuit on previously disclosed fraud. I have a question. Yes, Your Honor. Okay, I have a question about, can you hear me? Yes, Your Honor. I have a question about, is this published at some time by the investigating organization? I mean, where people can pick it up off the internet or any other place? Well, as far as public disclosure, the case filing, the Deming complaint was public disclosure. The media accounts thereafter with the settlement were public disclosures. We would argue that the familiar with them, you know, I don't, I don't think you're answering Judge Seiler's question. He wants to know how public the IRO work is. So you have this private consultant. Is that public? The answer is the IRO reports go to the provider and they are, they're produced to the provider and to the OIG. Okay. The issue is, is, is government awareness, government expectation of a continuation of fraud. And we have that with an IRO in place and a CIA with an IRO monitored by the OIG in place. Well, so the Judge Seiler, I think is asking an important question. It's all about public disclosure. I mean, what, how do you make this argument in terms of the statute? Well, the original problem was publicly disclosed. And now the question is whether this new complaint materially adds, is that how you think about it? Or how do you, how do you look at it in terms of the statute? Because if the IRO stuff is not public, that seems to help the plaintiffs. Well, if, if they, if they follow the statutory rules, if they follow the two prongs of the public disclosure bar, and I would disagree that they have here. The, the IRO reports may not be public, but conclusory, conclusory allegations don't, don't support this, this either. And so the IRO government awareness, government expectation, and the government clearly, from the beginning, and throughout the duration of this IRO, through the duration of the CIA, for three years, the government was there looking into this provider. I mean, the, the district court said the OIG retained ultimate supervisory authority over Corbin's medical practice. That's the issue, your honor. I see your time is up. So if you want to just briefly conclude, uh, I will, uh, your honor, um, in the, with regard to the public disclosure bar, the, the, in the amended complaint, the relator says, this is the exact scheme, nearly identical schemes at the center of the QUETAM. There are no unique details in the scheme. It mirrors the prior complaint. The, with regard to original source. All right. All right. I'm in a concluding sentence without 16 depending clauses. Uh, so I'm sorry, your honor. I don't, but I, I just want to be fair to everybody. So it sounds like you'd like us to affirm. Yes, your honor. All right. All right. All right. Thank you, your honor. May it please the court. This is Brian Roark, the hospital at Appalese. I'd like to focus the court on the allegations with respect to the hospital defendants. Dr. Maurer's allegations as to the hospitals are even more attenuated than his allegations as, as to Dr. Corbin. And that's important for both the public disclosure bar analysis and the 9B analysis. Dr. Maurer alleges that Dr. Corbin performed medically unnecessary cardiac procedures. He doesn't allege that the hospitals participated in that. His hook, how he seeks to bring the hospitals in is he alleges that the hospital should have known. The hospital should have known that Dr. Corbin was performing unnecessary procedures for two reasons. One, he says, because of the number of procedures that were being performed. Two, because he alleges that complaints were made to hospital committees about Dr. Corbin. Those, those hooks to the hospital, the number of procedures and the complaints that is lifted verbatim from Deming. So as it relates to the hospital defendants in this case, Dr. Maurer has pled nothing new at all with, with respect to the hospitals. The primary case that the relator relies on here is Ibanez. I'd like to briefly address why the district court's decision is consistent with Ibanez. First, the Ibanez court said the court won't assume that a fraudulent scheme continued just because it was settled before. The court won't assume that, but only if the new allegations are temporally distant from the resolved conduct. As it relates to the hospitals, the hospital settled Dr. Deming's allegations in July, 2015. The allegations raised by Dr. Maurer, he identifies additional examples of unnecessary care starting in March, 2016. That's, that's less than a year later. We've numerous cases to the court from both this circuit and other circuits that bringing a new QTM based on publicly disclosed conduct from less than a year before wouldn't be temporally distant. Second, as Mr. Newton addressed, the Ibanez court also said that the, what the court has to consider relating to whether this is substantially similar is, does the new fraud, does the new QTM allege fraud beyond a reasonable period that the government would have expected it to continue? The Ibanez court said if a settlement is on February 12th, no one would believe that a new relator could bring claims on February 13th or February 14th. How the court determines whether or not the period of time is, is when the court, when a government would still expect fraud to would have expected is that there was an integrity agreement in place with the government having the possibility of reviewing the exact same kinds of claims that Dr. Maurer raises. I would point the court to paragraph seven of Dr. Maurer's amended complaint. Dr. Maurer actually describes in his own complaint, what, what an integrity agreement is and what he says, quote, one of the purposes for binding violators to an integrity agreement after settling investigations is to use monitoring or supervision to, to deter repeat violations. I'm Dr. Maurer. I have a question. Can you hear me? Yes, Mr. Sallard. Well, I was wondering, is this integrity agreement published or disclosed to the general public or is it kept secret all this time? It is published on government website where, where it is available to the, to the public. We've included the, the site or you, you can Google Deming integrity agreement and pull it up on, on the internet. So our position is that. I have one additional question. Was the defendant doctor, was he on the payroll of, of your hospitals or any one of them, or was he an independent contractor? Dr. Maurer was not on the payroll of the, of the, of the hospitals. What about Dr. Corbin? Dr. Corbin was not an employee of, of the hospital. I think that Dr. Corbin worked as a contractor for the hospital and may have been paid by the hospital for some services that he provided to the hospital, like reading EKGs or, or, or things like that. That he was not an employee. That's correct. He was not an employee. Okay. Um, for also want to address the court. I have a question about the statute. Um, before I do it though, judge Larson, do you have, I don't want to, I don't want to take all the time or I just wanted to ask about that. Okay. Mr. Work, could you just help us? I'm really, it's a very strangely written statute. So I call it nine a and B, I'm calling it four a and four B. How do they, how are they supposed to interrelate? Is the court asking how does the public disclosure bar interact with rule nine B? No, no, no. I'm sorry. I'm just focusing on the statute for a and four B for a has public disclosure, right? And then substantially the same allegations, right? That inquiry, then you have this in four B or a definition of original source and materially ads. How does one, how does one look at that? Is there a sequencing? Do you look at one before the other is, are they for different purposes? There's a great deal of overlap between whether something is substantially the same and does it materially add? And a lot of courts confused combined the two the way that the analysis is supposed to work is as, as this court said in the U S XRL able versus U S bank case courts generally take a broad view of whether or not a new KTM is, is substantially similar to prior disclosed events. And then where in a situation like this with Dr. Mauer, where the court should focus its attention is around the materially ads element. Is Dr. Mauer a true whistleblower where he's bringing new additional information that would make a difference to the government? Would it influence the government's behavior? And, and, and some in this case and what our contention is, but just, just to stop you there. I think I, I think I agree with you. So in other words, you would look at this case and you would say, this complaint doesn't, isn't, it is substantially the same allegations because it repeats the same problem just for a different time period, different victims. So you fail under that ground, but the client claimant is allowed to say, but despite all that, he's an original source and the original source might be I'm making the point that is how one could, one should look at it. Then that leads to the question, well, can you do that when the IA is not over or can you do that when there's an IRO? That is, that is exactly, those are the inquiries, right? In the right sequence. That is the right sequence. And the court has to consider two factors, how much time has passed between the public disclosure and the new KTM. And then what is the nature of the new, new Dr. Deming alleged that he was basing his allegations on the fact that he served on a quality assurance committee at the hospital. He identified specific physicians who had complained about Dr. Corbin's over utilization. Dr. Maurer wasn't so bold as to try to copy those allegations. All he did was copy the conclusions that Dr. Deming had, had, had raised. But he has, he has no basis for doing that. And so as it relates to the hospital. Why, why, why isn't a more charitable way to look at this? Put the IRO to the side. Okay. Let's pretend there is no IRO. Why isn't a more charitable way to look at this that the materially ads requirement is simply met by the fact that his central allegation is that the doctor is violating the IA? It's all a question of what level of to look at whether it's materially as encountered that problem before defendants are always going to argue for a high level of generality. If there was Medicare fraud, more than this is Medicare fraud. Relators are going to argue for my level of generality is violating the settlement agreement. Why is that not the right level of generality? You can come back and say the IRO accounts for that. And therefore you can't do anything before the end of 2016. But I'm struggling with why it's what's wrong with a ketamine case that is you're violating the settlement agreement. I provide two answers. One, if all that was necessary for a new ketamine to go forward would be for a relator to just identify another claim or another example, it would basically collapse the public disclosure bar analysis into a motion to enforce the settlement agreement. Was this new claim included under the previous settlement agreement or not? And that's not the intent of the public disclosure bar. If Dr. Mauer had alleged ways in which the defendants had violated the settlement agreement, for example, that they undertook efforts to hide information from the IRO, that they engaged in the fraud in a different way, I think that that potentially could save his claims here. But he hasn't alleged he hasn't the integrity agreement was violated, but he alleges that just because he says that Dr. Corbin was still doing unnecessary procedures. He pleads no other facts as to any conduct or any scheme to violate the settlement agreement. And I would say that that matters not just for public disclosure. It matters for 9B as well. That overlap makes sense, but it also is which I, as a former advocate, I would do exactly what you're doing, but I'm now a judge. So let me ask Judge Seiler or Judge Larson, have any more questions for Mr. Roark? No. Okay. Well, then if you're all right, we appreciate your argument. Ms. Serg, you've got your rebuttal. Thank you. I just had a few points that I wanted to make regarding the temporal distance arguments that were mentioned earlier. The case law is very clear that the temporal distance is measured between the resolved conduct and the new allegations, not the date of an agreement that resolves the bad conduct, but the date of the resolved conduct itself. So Deming resolved conduct that occurred between 2004 and 2012, and our allegations stem from 20, yes. I just want to ask you, so what does it mean the resolved conduct? In other words, like how should we, what, you say there are all these cases that stand for that proposition, maybe you can just tell me. Other than Ubanez, what's the rest of it? Yeah, Chester is a case that I think all of the parties have cited too, and that temporal distance was measured from the as the cutoff line there, and that was when, that was the date of the resolved conduct. So it's the conduct that is resolved by the settlement. And so in that sense, I think that we've more than established a sufficient temporal distance. So Ms. Serg, why don't you try to respond to something Mr. Rourke said, which, so if you were listening to that conversation, I was making the point that perhaps an allegation that is a violation of the settlement agreement, a violation of the IA, gets you outside the public disclosure bar because it materially adds. Mr. Rourke's response was, well, that might be true in the abstract, but all the complaint does is simply repeat the prior allegations, find in the first complaint, and simply adds the conclusion that the settlement agreement was violated. That seems like a fair point. So it seems to me your answer to that should be, well, no, no, here's what we did. We showed how they're violating the settlement agreement or the little games they're playing to allow them to get around the settlement agreement. Is that in the complaint? Can you respond? Yes, sir, it is. We talk about how the IA required training for employees, which we submit never occurred. At least my client was never made to go through any training. My client relates an instance where he's told by the office manager, don't worry about it. We'll just write down on this piece of paper that you did it, when in fact nobody really did. And we also talked about how Dr. Corbin actively undermined the medical judgment of the physicians in the practice. And they would say, we don't think any And then, like I mentioned earlier, we also have allegations in the complaint regarding actively misrepresenting the patient's condition in the medical record so that you could justify the performance of all these cardiac procedures. I see that I'm out of time, Judge. The violations of the settlement agreement were not doing training and then continuing to do the I think that's what I heard. Are those the two essential points? I don't think that there are allegations from Deming regarding active undermining of other physicians and the practice actively undermining their medical judgment or actively falsifying the information contained in the medical record so as to justify the procedures. I got it. Okay. Judge Siler or Judge Larson, do you have any other questions? No. Okay, thanks to all three of you. These are complicated cases so we're really grateful for the briefing and argument and thanks very much. The case will be submitted. We'll hear the next case. Thank you.